UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TOTAL ENVIRONMENTAL
CONCEPTS, INC.

        **Plaintiff,**

                            Case No. 2:20-cv-3992
v.                          Judge Edmund A. Sargus, Jr.
                            Magistrate Judge Kimberly A. Jolson

**FEDERAL INSURANCE COMPANY.,**

        **Defendant.**

## OPINION AND ORDER

This matter arises on Defendant Federal Insurance Company's Motion to Dismiss or Stay Pursuant to the Federal Arbitration Act. (ECF No. 15). Also disposed of in this order is Plaintiff Total Environmental Concepts, Inc.'s Motion for Leave to File Sur-Reply. (ECF No. 22). For the reasons set forth below, the Court **DENIES** Defendant's Motion to Dismiss or Stay. (ECF No. 15). Plaintiff's Motion for Leave to File Sur-Reply is **GRANTED**. (ECF No. 22).

**I.**      **Procedural Background**

Plaintiff Total Environmental Concepts, Inc. (TECI) filed this action in the Southern District of Ohio against Defendant Federal Insurance Company on August 6, 2020. (ECF No. 1). Plaintiff alleged Federal Insurance Company (FIC, also referred to as "Surety") owed it "amounts unpaid pursuant to TECI's contract with non-party Brican, Inc." (*Id*., at 1). In compliance with the Miller Act, FIC had acted as surety to Brican. (*Id*., at 1).

Defendant FIC filed the instant Motion to Dismiss on March 4, 2021. (ECF No. 15). Plaintiff Responded on March 17, 2021. (ECF No. 18). Defendant Replied shortly after, on

April 1, 2021.  (ECF No. 21).  Plaintiff then sought leave from the Court to file a Sur-Reply on April 2, 2021.  (ECF No. 22).  Included with Plaintiff's motion was the Sur-reply.  (ECF No. 22, Exhibit 1).

## II.     Factual Background

In 2017 a Veterans Administration contractor, Brican, entered into a subcontract with TECI.  (ECF No. 1, Exhibit 2, at 1).  Brican had contracted with the Veterans Administration to perform improvements to a project titled the "Columbus Boiler Plant Replacement.  (ECF No. 1, at 1).  TECI's subcontract obliged the company "to provide certain fuel tank installation and controls work and attendant materials for the Project."  (ECF No. 1, at 3).

Pursuant to the Miller Act, Brican obtained a payment bond from a surety. (ECF No. 1, Exhibit 1).   Bonds of this type are meant "to secure payment to subcontractors for work performed on the Project" and are required by the Act.  (ECF No. 1, at 3) (ECF No. 18, at 3).  The surety in question, Federal Insurance Company, provided the bond, which was titled "payment Bond, No. 8244-89-27."  (ECF No. 1, at 3) (ECF No. 1, Exhibit 1).  However, while FIC's bond guaranteed payment to TECI, the two never entered any contract together.  (ECF No. 18, at 3).

After entering into its subcontract with Brican, TECI began performing work on the Project.  (ECF No. 1, at 3).  However, Brican and TECI eventually came to dispute payment. (*Id*., at 3–4).  TECI alleged that it was owed money that Brican refused to pay.  (*Id*.).  This dispute escalated, until TECI finally filed suit in the Southern District of Ohio on August 6, 2020.  (ECF No. 1).  TECI alleged one Miller Act violation stemming from Brican's refusal of payment.  Because FIC acted as Brican's surety, TECI sued FIC to recover the payment bond. (*Id*., at 4–5).  FIC, however, argues that TECI must arbitrate their dispute.  (ECF No. 15).

### III. Standard

The Federal Arbitration Act ("Act") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that [courts] rigorously enforce agreements to arbitrate . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

The Act provides federal courts with the authority to stay lawsuits in cases where issues are referable to arbitration pursuant to written agreements calling for such arbitration, and to compel arbitration where a party to a dispute has refused to arbitrate the dispute as required by an enforceable agreement. *See* 9 U.S.C. §§ 3-4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003).

### IV. Analysis

Defendant maintains the Court must "dismiss Plaintiff's Complaint," or at the very least "stay the pending matter subject to the conclusion of mandatory arbitration" "because the matters addressed in Plaintiff's Complaint are properly subject to a mandatory arbitration provision." (ECF No. 15, at 1). Plaintiff counters that "Surety's Motion should be denied because there is no arbitration agreement between TECI and Surety, and the Payment Bond under which Surety is

liable to TECI does not incorporate, reference, or otherwise refer to the arbitration agreement between TECI and non-party Brican, Inc ("Brican").  (ECF No. 18, at 1).  Thus, the question before the Court is as follows:  Are the matters addressed in Plaintiff's Complaint subject to a mandatory arbitration agreement?  For the reasons described below, the Court finds that they are not.

      **a.  Arbitration Agreement**

Arbitration is a federally favored policy.  *Schearson/American Express v. McMahon*, 482 U.S. 220, 227 (1987).  The Federal Arbitration Act (FAA) "provides that a written arbitration agreement 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *American General Life and Accident Insurance Company v. Wood*, 429 F. 3d 83, 87 (4th Cir. 2005), citing 9 U.S.C. § 2.  However, Federal law "does not require parties to arbitrate when they have not agreed to do so …." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989).  In this case, it is undisputed that no written arbitration agreement exists between FIC and TECI.  As Plaintiff points out "[t]he only arbitration agreement cited in Surety's Motion is that which appears in the Subcontract between non-party Brican and TECI."  (ECF No. 18, at 3).  The portion of this agreement dealing with arbitration is as follows:

> ….The parties agree that any dispute or claim concerning this Agreement or the terms or conditions of employment, including whether such dispute is arbitratable, will be settled by arbitration. The arbitration proceedings shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association in effect at the time a demand for arbitration under the rules is made. The decision of the arbitrators, including determination of any amount of damages suffered, shall be exclusive, final, and binding on both parties, their heirs, executors, administrators, successors and assigns…

ECF No. 1, Exhibit 2, at 7).

Despite the lack of an agreement between FIC and TECI, FIC argues it is entitled to enforce the Brican-TECI arbitration agreement. FIC first contends that "based only on the four corners of Plaintiff's Complaint, that all of Plaintiff's claims are arbitrable." (ECF No. 15, at 5). However, this argument fails due to lack of privity. While Plaintiff agreed to arbitrate all claims against Brican, no agreement to arbitrate between FIC and TECI exists. And federal law "does not require parties to arbitrate when they have not agreed to do so …." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). "Nor can a party that has agreed to arbitrate with one party be required to arbitrate with a different party." 7 Bruner & O'Connor Construction Law § 21:93; see also *Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc.* 2007 U.S. Dist. LEXIS 52156 (W.D. Ky. July 17, 2007). An argument to arbitrate disputes with Brican is not an agreement to arbitrate disputes with all parties. As such, Defendant's first argument fails.

      b. **Incorporation by Reference**

To get around this lack of privity, Defendant pursues a second argument in their Reply. (ECF No. 21). Defendant appears to argue that the arbitration clause in TECI's contract with Brican was incorporated by reference in the Payment Bond.[1] Incorporation by reference is one of "[f]ive theories for binding nonsignatories to arbitration agreements" that "have been recognized." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). These include

---

[1] Defendant's argument is confused. While Defendant contends "[t]he 'incorporation by reference' argument is not available to Plaintiff," it is not Plaintiff who must rely on the argument. (ECF No. 21, at 2). If there is no incorporation by reference, then, as a non-signatory, Plaintiff may not enforce the agreement. *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir. 1984) citing *J & S Construction Co. v. Travelers Indemnity Co.*, 520 F.2d 809 (1st Cir. 1975).

5

"(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id*. "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc*., 261 F. App'x 841, 848 (6th Cir. 2008).

Here the Payment Bond does not fulfill any of the requirements of *Int'l Ass'n of Machinists*. Most importantly, the Bond makes no reference to the Brican-TECI subcontract. (ECF No. 1, Exhibit 1). While Defendant states "the surety's contract is a payment bond and references the Principal Contract and the Purchase Order," at no point does Defendant cite to any portion of the agreements that incorporate, reference, or refer to the Subcontract between Brican and TECI. (ECF No. 21, at 6). Further, Defendant cannot point to any such reference made in any other agreement, if such an agreement even exists, between TECI and FIC.

Additionally, as the Payment Bond makes no reference to the subcontract between Brican and TECI, "the identity of the separate document may" not "be ascertained" from it. *Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc*., 261 F. App'x 841, 848 (6th Cir. 2008). Thus, the second element of *Int'l Ass'n of Machinists* is unfulfilled. And finally, allowing FIC to enforce the arbitration agreement against TECI would certainly result in surprise. TECI signed their subcontract with Brican, not FIC. In Plaintiff's own words, "TECI would be surprised if Surety were permitted to enforce the arbitration agreement in the contract to which it is a total stranger." (ECF No. 22, Exhibit 1, at 2). As such, the doctrine of incorporation by reference is not applicable here.

Defendant points to several pieces of caselaw to justify enforcing the arbitration clause against TECI. One such decision is *J & S Constr. Co. v. Travelers Indem. Co*., 520 F.2d 809 (1st

6

Cir. Mass. August 8, 1975). Defendant uses this case to argue "a contractual obligation to arbitrate cannot be rendered meaningless by the expedient of bringing suit on statutory payment bond." *Id*., at 810. However, in citing only this portion of the opinion, Defendant ignores the relevant language located two sentences above. There, the court explains that "suit was based on subcontractor's contractual and quasi-contractual rights against the principal. The contract was explicitly incorporated by reference in the surety bond." *Id*., at 810. Thus, the Court reached its decision because the subcontractor's contract with the principal contractor, the subcontract, was referenced in the surety bond. Here, as mentioned above, the Payment Bond does not incorporate, explicitly or implicitly, the subcontract between Brican and TECI.

Defendant also cites to *Thomas O'Connor & Co. v. Ins. Co. of N. Am.*, 697 F.Supp. 563 (D.Mass.1988) and *Hoffman v. Fid. & Deposit Co.*, 734 F.Supp. 192 (D.N.J.1990), using them to make the same argument. (ECF No. 21, at 3) (*Id*., at 6). However, just like *J & S Constr. Co.*, these cases too are inapposite to the case at bar. In both *Thomas O'Connor* and *Hoffman*, the arbitration agreement was incorporated by reference in the performance bond. "The arbitration clause is incorporated by reference in both the Subcontract between O'Connor and Distral and the payment bond binding INA as Distral's surety." *Thomas O'Connor & Co. v. Ins. Co. of N. Am.*, 697 F. Supp. 563 (D. Mass. 1988). "The Bond incorporated the Contract by reference." *Hoffman v. Fid. & Deposit Co.*, 734 F.Supp. 192 (D.N.J.1990). The payment bond in this case makes no such reference. (ECF No. 1, Exhibit 1).

Both Defendant and Plaintiff refer to *Exchange Mut. Ins. Co. v. Haskell Co*., 742 F.2d 274 (6th Cir.1984) in support of their arguments. Defendant states its "ultimate determination is consistent with the position taken by Defendant herein." (ECF No. 21, at 4). To Defendant, the case stands for the following proposition: "Since the surety guaranteed the performance of the

7

subcontractor and since the subcontractor agreed to perform its work consistent with the obligation of the general contractor to the owner, the surety must therefore arbitrate the claims since the owner's contract requires arbitration.  In summary, *Haskell* has come to stand for the proposition that a non-signatory surety can be forced to arbitrate if the bond references the contract." (ECF No. 21, at 5).  However, like all the previously discussed cases, "the performance bond" in *Haskell* "specifically referred to and incorporated the subcontract." *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984).[2]  That is not the case here.

While arbitration is a federally favored policy, such favor does require arbitration to be forced upon an unsuspecting party.  In the instant matter no "valid agreement to arbitrate exists between the parties." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).  Further, there is no agreement between the two parties that incorporates TECI's arbitration agreement with Brican.  As such, Defendant's argument fails.  Defendant's Motion to Dismiss or Stay is **DENIED**. (ECF No. 15).

V.      Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss (ECF No 15).  The Court **GRANTS** Plaintiff's Motion for Leave to File Sur-Reply pursuant to Local Civil Rule 7.2, for good cause shown.  (ECF No. 22).  This case is to remain open.


        IT IS SO ORDERED.


**4/4/2023**                                              s/Edmund A. Sargus, Jr.
**DATE**                                                  **EDMUND A. SARGUS, JR.**
                                                          **UNITED STATES DISTRICT JUDGE**

---

[2] There is a minor distinction between *Haskell* and the case at bar.  Here, FIC, a surety, is seeking to enforce arbitration.  Whereas in *Haskell*, "the surety is not the party seeking arbitration." *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir.1984).  However, the analysis in either case is the same, as "the same principles apply." *Id*.